THE ROSEN LAW FIRM, P.A.
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Kevin Chan (KC 0228)
kchan@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff



13 CV 9031

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOY SINGH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>TRI-TECH HOLDING, INC.,<br><br>Defendant. | Case No:<br><br>CLASS ACTION<br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff, individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendant, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Tri-Tech Holding, Inc. ("Tri-Tech" or the "Company"), and analyst and other media

1

reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendant and its affiliates, who purchased the common stock of Tri-Tech between March 26, 2012 and December 12, 2013, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Tri-Tech for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Defendant Tri-Tech is a Cayman Islands corporation, whose headquarters are in the People's Republic of China. Tri-Tech provides integrated solutions to water resource management and environmental protection industries in China, India, North America and the Middle East. At all relevant times, Tri-Tech's stock was listed on the NASDAQ under ticker "TRIT."

3. Throughout the Class Period, Tri-Tech made false and/or misleading statements, and failed to disclose material adverse facts about the Company's deficient disclosure and internal controls.

4. When the market learned of the deficient disclosure and internal controls, the price of Tri-Tech stock fell and was halted by the NASDAQ, causing substantial damages to class members.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

7. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).

8. In connection with the acts alleged in this complaint, defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

9. Plaintiff Joy Singh ("Singh" or "Plaintiff"), as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Tri-Tech during the Class Period and has been damaged thereby.

10. Defendant Tri-Tech is a Cayman Islands company headquartered in the PRC.

## ALLEGATIONS OF FALSE STATEMENTS

11. On March 26, 2012, the Company filed with the SEC a materially false and misleading annual report for the fiscal year ended December 31, 2011 on Form 10-K.

12. This "2011 10-K" falsely stated that based on the Company's CEO and CFO's evaluation, the Company's disclosure controls were effective. The 2011 10-K states in relevant part:

> Regulations under the Securities Exchange Act of 1934, as amended, (the "Exchange Act") require public companies to maintain "disclosure controls and procedures," which are defined as controls and other procedures that are designed to ensure that information required to be disclosed by the issuer in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include, without limitation, controls and procedures designed to ensure that information required to be disclosed by an issuer in the reports that it files or

submits under the Exchange Act is accumulated and communicated to the issuer's management, including its principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.

The Company conducted an evaluation, with the participation of its Chief Executive Officer and its Chief Financial Officer, of the effectiveness of its disclosure controls and procedures as of December 31, 2011. Based on such evaluation, its Chief Executive Officer and Chief Financial Officer concluded that, as of December 31, 2011, the Company's disclosure controls and procedures were effective.

13. The 2011 10-K also falsely states that the Company's internal control over financial reporting was effective. The 2011 10-LK states in relevant part:

The Company's management is responsible for establishing and maintaining adequate internal control over financial reporting. Internal control over financial reporting is defined in Rule 13a-15(f) or 15d-15(f) promulgated under the Exchange Act as a process designed by, or under the supervision of, the issuer's principal executive and principal financial officers and effected by the issuer's board of directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with the U.S. generally accepted accounting principles ("U.S. GAAP").

All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurance with respect to financial statement preparation and presentation. Because of the inherent limitations of internal control, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. However, these inherent limitations are known features of the financial reporting process. Therefore, it is possible to design into the process safeguards to reduce, though not eliminate, this risk.

As of December 31, 2011, the Company carried out an evaluation based on the criteria for effective internal control over financial reporting established in "Internal Control—Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") and SEC guidance. Based on such assessment, management concluded that its internal control over financial reporting was effective.

14. On May 14, 2012 the Company filed with the SEC its first quarter ended March 31, 2012 results on Form 10-Q. This "Q1 2012 10-Q" falsely stated that the Company's

disclosure controls were effective and noted no material changes to the Company's internal controls. The Q1 2012 10-Q states in relevant part:

> *Disclosure Controls and Procedures*
>
> As of March 31, 2012, the Company carried out an evaluation, under the supervision of and with the participation of management, including the Company's chief executive officer and chief financial officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based on the foregoing, the chief executive officer and chief financial officer concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) were effective.
>
> *Changes in Internal Control over Financial Reporting*
>
> There were no changes in the Company's internal control over financial reporting (as defined in Rule 13a-15(f) of the Securities Exchange Act of 1934) during the three month period ended March 31, 2012 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

15. Similar disclosures were contained in the following quarterly reports:

   a) Second quarter ended June 30, 2012 10-Q filed with SEC on August 14, 2012;

   b) Third quarter ended September 30, 2012 10-Q filed with SEC on November 14, 2012;

   c) First quarter ended March 31, 2013 10-Q filed with SEC on May 15, 2013;

   d) Second quarter ended June 30, 2013 10-Q filed with SEC on August 14, 2013; and

   e) Third quarter ended September 30, 2013 10-Q filed with SEC on November 19, 2013.

16. On April 1, 2013 the Company filed with the SEC its annual report for the fiscal year ended December 31, 2012 on Form 10-K. Like the 2011 10-K, this "2012 10-K" falsely stated that Tri-Tech's disclosure and internal controls were effective.

## THE TRUTH BEGINS TO EMERGE

17. On December 12, 2013, the Company filed an 8-K revealing the ease at which the Company's purported "effective" internal controls were bypassed and also revealed for the first time that the Company's CEO who had previously been replaced was in fact terminated. The 8-K states in relevant part:

> On December 11, 2013, the Board of Directors ("Board") of Tri-Tech Holding Inc. (the "Registrant"), with immediate effect, suspended the authority of Guang (Gavin) Cheng to act on behalf of the Registrant in his capacity as a member of the Registrant's Board and authorized the Registrant's appropriate officers to remove Mr. Cheng from any and all positions in the Registrant's subsidiaries and affiliates. The Board further advises its shareholders that it will recommend the early replacement of Mr. Cheng from its Board at the upcoming annual shareholder meeting. The reasons for these actions, and the Registrant's proactive steps to safeguard the Registrant and its shareholders from adverse actions by Mr. Cheng are described in greater detail in this current report and relate to (1) the Board's determination of a breach by Mr. Cheng of the Registrant's policies and procedures regarding wire transfers and (2) Mr. Cheng's unauthorized withholding of the corporate chop of the Registrant's affiliate, Beijing Satellite Science & Technology Co. ("BSST") upon Mr. Cheng's termination by the Registrant as its Chief Executive Officer.
>
> *Background - Termination of Gavin Cheng as Chief Executive Officer*
>
> Mr. Cheng served as the Registrant's Chief Executive Officer from January 2013 until his termination on September 17, 2013 by unanimous consent (including Mr. Cheng's own consent) of the Board. On or about September 16, 2013, the Board was made aware of violations of its internal policies regarding wire transfers on April 8, 2013 by Mr. Cheng in the Registrant's subsidiary Ordos Tri-Tech Anguo Investment Co. Ltd. ("Anguo"). At such time, Mr. Cheng was Chairman of Anguo.
>
> The accounting and internal control procedures in question require employees to provide, in advance, relevant documentation of the justification for payments, signed by designated personnel. Such documentation typically consists of the agreements upon which such payments are based, as well as approval paperwork regarding a proposed transfer.

By contrast, Mr. Cheng instructed employees of Anguo to transfer by wire RMB 1 million as a loan to a third party. Mr. Cheng did not provide a loan agreement or any internal paperwork designed for such transfer purposes prior to such transfer. Based on its review of documentation provided, the Board determined that the executed agreement provided to document the relationship was sealed by Anguo on September 16, 2013. Notwithstanding this late seal, on the books of Anguo, the transaction was recorded as stated in the agreement. Also importantly, on September 13, 2013, the entire principal of the loan was repaid to Anguo, and on September 17, 2013, the interest stated in the loan was repaid per the terms of such agreement. As a result, the Registrant and its shareholders have not recognized any loss with regard to this loan and, in fact, have received all interest and principal of such loan.

Notwithstanding the absence of actual monetary harm from this transaction to the Registrant, the Board of the Registrant unanimously determined (including Mr. Cheng's affirmative vote) to remove Mr. Cheng from his position as an officer of the Registrant.

\* \* \*

Based upon the internal review, the Registrant further strengthened its controls and procedures by implementing the following actions:

1. The Registrant replaced Mr. Cheng as its Chief Executive Officer with Phil Fan and replaced Mr. Cheng as Chairman of Anguo with Warren Zhao.
2. In recognition of the policy's success in discovering the management override, the Registrant strengthened its whistle-blower policy to continue to encourage its employees to report any questionable or problematic actions.
3. The Registrant conducted an internal audit on Mr. Cheng's departure to extend to the Registrant and all subsidiaries and departments Mr. Cheng had been entrusted to oversee. The internal review remains in process.
4. The Registrants advised its employees of Mr. Cheng's termination and reinforced its policies and procedures with employees.

*Unauthorized Retention of Company Chop*

After his termination as Chief Executive Officer of the Registrant, Mr. Cheng obtained the company chop for Beijing Satellite S&T Co., Ltd ("BSST"), an affiliate of the Registrant, of which Mr. Cheng is the legal representative. Each legally registered Company in China is required to have a company chop, which has to be registered with the Public Security Bureau ("PSB"). The company chop is required on all official documents such as contracts, bank account applications and labor contracts. The company chop legally represents a company in dealing with third parties and is therefore valid even without a signature.

On November 12, 2013, Mr. Cheng contacted the Registrant and advised that Mr. Cheng had possession of and did not intend to relinquish the company chop of BSST. On November 11, November 12, and November 13, 2013, the Registrant communicated with Mr. Cheng, advising him of his obligation to return the chop immediately to the Registrant. Mr. Cheng has refused to do so through the date of this report, maintaining his right to retain the chop. Mr. Cheng's stated refusal is based on his claim that he has a

right to retain the chop due to his position as the legal representative of BSST, notwithstanding the contractual control the Registrant exercises over BSST.

On November 27, 2013, Mr. Cheng's representative informed the Registrant that Mr. Cheng intends to challenge the validity of the contractual relationship by which the Registrant and its subsidiaries control BSST. If successful, this challenge could result in the loss of control of BSST and the subsequent deconsolidation of BSST from the financial statements of the Registrant. The Registrant will vigorously protect the interests of the Registrant and its shareholders in maintaining control over BSST.

Although the Registrant believes it has implemented and will implement sufficient protection of its relationship with BSST to retain control, the Registrant's Board concluded in its December 11, 2013 meeting that Mr. Cheng's efforts—even if unsuccessful—represent a serious and significant breach of his duties of loyalty to the Registrant. The Board believes that a fundamental obligation of a director is to act in the best interest of the Registrant and its shareholders. In this case, such an obligation would be expressed as efforts to maintain the business of the Registrant as a consolidated entity. Mr. Cheng's stated intention to cause BSST to be deconsolidated from the Registrant, with no payment to be made to the Registrant or its shareholders for the loss of control over BSST and participation in its future profitability is diametrically opposed to this obligation. Due to the severity of Mr. Cheng's actions, as of December 11, 2013, the Board has suspended Mr. Cheng's ability to act on behalf of the Registrant in his capacity as a director and has removed him from all positions over which he has appointment authority, pending the resolution at the upcoming annual shareholder meeting. At that time, the Registrant's shareholders will be asked whether Mr. Cheng should be replaced on the Board of the Registrant.

18. This announcement caused the Company's stock to fall 10.5% or $.17/share on December 12, 2013 before all trading in the Company's stock was halted later that day.

19. To date, trading in the Company's stock remains halted, making the Company's stock illiquid and virtually worthless.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the common stock of Tri-Tech during the Class Period (the "Class"). Excluded from the Class are defendant, the officers and directors of the Company, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which defendant has or had a controlling interest.

21. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tri-Tech securities were actively traded on the NASDAQ Stock Market. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tri-Tech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

22. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendant's wrongful conduct in violation of federal law that is complained of herein.

23. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a) whether the Exchange Act was violated by defendant as alleged herein;

    b) whether statements made by defendant misrepresented material facts about the business, operations and management of the Company; and

    c) to what extent the members of the Class have sustained damages and the proper measure of damages.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

26. The market for Tri-Tech common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, Tri-Tech securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Tri-Tech securities relying upon the integrity of the market price of Tri-Tech securities and market information relating to Tri-Tech, and have been damaged thereby.

27. During the Class Period, defendant materially misled the investing public, thereby inflating the price of Tri-Tech securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendant's statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

28. At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendant made or caused to be made a series of materially false

or misleading statements about Tri-Tech's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Tri-Tech and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendant's materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing Tri-Tech securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of Tri-Tech common stock was removed and the price of Tri-Tech common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## *AFFILIATED UTE*

29. Neither Plaintiff nor the Class need prove reliance - either individually or as a class because under the circumstances of this case, which involves a failure to disclose disclosure and internal control deficiencies causing the misconduct described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## LOSS CAUSATION/ECONOMIC LOSS

30. During the Class Period, as detailed herein, defendant made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of securities and operated as a fraud or deceit on Class Period

purchasers of Tri-Tech securities by misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. As defendant's misrepresentations and fraudulent conduct became apparent to the market, the price of Tri-Tech common stock fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of Tri-Tech securities during the Class Period, plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against Defendant Tri-Tech

31. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32. During the Class Period, defendant carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other class members to purchase Tri-Tech's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Defendant took the actions set forth herein.

33. Defendant (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Tri-Tech's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

34. Defendant directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Tri-Tech as specified herein.

35. Defendant employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tri-Tech's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Tri-Tech and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Tri-Tech's securities during the Class Period.

36. Defendant had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that it failed to ascertain and to disclose such facts, even though such facts were available to it. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Tri-Tech's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.

37. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tri-Tech securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of

Tri-Tech's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendant, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendant but not disclosed in public statements by the defendant during the Class Period, Plaintiff and the other members of the Class acquired Tri-Tech securities during the Class Period at artificially high prices and were or will be damaged thereby.

38.  At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Tri-Tech's financial results, which were not disclosed by defendant, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Tri-Tech, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

39.  By virtue of the foregoing, defendant has violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

40.  As a direct and proximate result of defendant's wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's Securities during the Class Period.

41.  This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against Defendant, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 20, 2013

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

_____
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
Kevin Chan (KC 0228)
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Tri-Tech Holding Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Tri-Tech Holding Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** Joy
**Middle initial:**
**Last name:** Singh
**Address:**
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**



**REDACTED**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 11/1/2013 | 2000 | 1.80 |
| Common Stock | 10/1-31/2013 | 10000 | 1.58-2.05 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:              YES

**Certification for Joy Singh (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.        **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 12/16/2013



JS 44C/SDNY
REV. 7/2012

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**
Joy Singh, Individually and on behalf of all others similarly situated

**DEFENDANTS**
Tri-Tech Holding Inc.

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**
The Rosen Law Firm P.A.
275 Madison Ave 34th Floor New York, NY 10016
212-686-1060

**ATTORNEYS (IF KNOWN)**

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Pursuant to Section 10(b) of the Exchange Act [15 U.S.C. Section 78j(b)] and Rule 10b-5 [17 C.F.R. Section 240 10b-5]

Has this or a similar case been previously filed in SDNY at any time? No [ ]  Yes [ ]  Judge Previously Assigned

If yes, was this case  Vol. [ ]  Invol. [ ]  Dismissed. No [ ]  Yes [ ]  If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?  No [ ]  Yes [ ]

(PLACE AN [x] IN ONE BOX ONLY)  **NATURE OF SUIT**

**TORTS**                                                                 **ACTIONS UNDER STATUTES**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 OTHER FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 463 HABEAS CORPUS- ALIEN DETAINEE
[ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[x] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____ OTHER _____   JUDGE _____ DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: [x] YES  [ ] NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

| (PLACE AN x IN ONE BOX ONLY) | | | ORIGIN | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court <br> ☐ a. all parties represented <br> ☐ b. At least one party is pro se. | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from (Specify District) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judge Judgment |

| (PLACE AN x IN ONE BOX ONLY) | BASIS OF JURISDICTION | | IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441) |
|---|---|---|---|
| ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT | ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY) | ☐ 4 DIVERSITY | |

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Joy Singh,
C/O The Rosen Law Firm, P.A.
275 Madison Ave 34th Floor
New York, NY 10016

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Tri-Tech Holding Inc.
16 Floor of Tower B, Renji Plaza
101 Jingshun Road, Chaoyang District,
Beijing 100102 China

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one: THIS ACTION SHOULD BE ASSIGNED TO:  ☐ WHITE PLAINS   ☒ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 12-20-13   SIGNATURE OF ATTORNEY OF RECORD   ADMITTED TO PRACTICE IN THIS DISTRICT
RECEIPT #                                          [ ] NO
                                                   [X] YES (DATE ADMITTED Mo. 5  Yr. 2013)
                                                   Attorney Bar Code # PK9384

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)